11-1058-cv
Horvath v. Banco Comercial Portugues, S.A., Millennium BCPBANK, N.A.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of February, two thousand twelve.

Present:
   ROBERT A. KATZMANN,
   SUSAN L. CARNEY,
     *Circuit Judges*,
   JANE A. RESTANI,
     *Judge*.[*]

_____

JAMES FRANK HORVATH,

   *Plaintiff-Appellant*,

    v.           No. 11-1058-cv

BANCO COMERCIAL PORTUGUES, S.A., and
MILLENNIUM BCPBANK, N.A.,

   *Defendants-Appellees*.

_____

For Plaintiff-Appellant:    DOUGLAS R. JENSEN (Robert Knuts , *of counsel*), Park & Jensen, LLP, New York, N.Y.

_____

  * The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

For Defendants-Appellees:                    ROBERT A. O'HARE JR., O'Hare Parnagian LLP, New
                                             York, N.Y.

        Appeal from the United States District Court for the Southern District of New York
(Daniels, *J.*).

        **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and

**DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

        Plaintiff-Appellant James Frank Horvath appeals a judgment entered on February 16,

2011, by the United States District Court for the Southern District of New York (Daniels, *J.*)

following a Memorandum Order dated February 15, 2011, granting the motion of Defendants-

Appellants Banco Comercial Portugues, S.A. ("BCP") and Millennium BCPBANK, N.A.

("Millennium") to dismiss the Complaint.  We presume the parties' familiarity with the facts and

procedural history of this case.

        "Where the district court has relied on pleadings and affidavits to grant a Rule 12(b)(3)

motion to dismiss on the basis of a forum selection clause, our review is *de novo*."  *Phillips v.*

*Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).  "In analyzing whether the plaintiff has

made the requisite prima facie showing that venue is proper, we view all the facts in a light most

favorable to plaintiff."  *Id.*  "Contract interpretation as a question of law is also reviewed *de novo*

on appeal."  *Id.*  We review a district court's denial of leave to amend for abuse of discretion.  *In*

*re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 220 (2d Cir. 2006).

        Horvath argues that the district court erred in dismissing his claims asserted against BCP

on the ground that they fall under a mandatory forum selection clause contained in an agreement

between the parties.  We have articulated a four-part test for determining whether to dismiss a

claim based on a contract's forum selection clause:

2

The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause . . . . The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Phillips*, 494 F.3d at 383-84 (internal citations omitted) (emphases in original).

Here, when opening his investment account with BCP, Horvath signed a "Client[] Statement" in which he declared that he "ha[s] full knowledge of the present 'General Terms and Conditions' and fully agree[s] with them." J.A. 196. The General Terms and Conditions contains the following mandatory forum selection clause (translated from the Portuguese): "For any disputes arising from the execution of the present Agreement, the Courts of Lisbon or Oporto shall have exclusive jurisdiction, with express waiver of any other jurisdiction." J.A. 195. Horvath's contention that this clause was not reasonably communicated to him because he does not understand Portuguese and because he does not recall receiving a copy of the General Terms and Conditions at the time he signed the Client Statement is without merit. Absent substantive unconscionability or fraud of a type not alleged here, parties are charged with knowing and understanding the contents of documents they knowingly sign. *See AXA Versicherung AG v. N.H. Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010) (summary order) ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (parties are bound by documents expressly incorporated by reference into agreements to which they manifest their assent).

3

Moreover, we conclude that all of Horvath's claims, against both BCP and Millennium, "arise out of" the General Terms and Conditions. The General Terms and Conditions establishes the legal contours of BCP's investment relationship with Horvath. *See* J.A. 185 ("The opening, use, maintenance and closing of [Horvath's investment account with BCP] are governed by these General Terms and Conditions . . . ."); *see also* J.A. 306 ("This account opening agreement . . . is governed by the account opening General Terms and Conditions . . . ."). Horvath's claims against BCP all center on BCP's alleged misrepresentations regarding certain investments that Horvath purchased using his investment account with BCP. Accordingly, his claims necessarily arise out of the General Terms and Conditions, which is the agreement setting forth the terms and conditions governing that account.

As to Horvath's claims against Millennium, a forum selection clause in a contract encompasses claims made against a non-signatory where (1) those claims are "nearly identical to" the claims against the signatory, (2) "arise out of" the same transaction as those claims, and (3) the non-signatory consents to the foreign jurisdiction. *See Novak v. Tucows, Inc.*, 06 Civ. 1909(JFB), 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d Cir. 2009) (summary order); *Direct Mail Prod. Serv's Ltd. v. MBNA Corp.*, 00 Civ. 10550(SHS), 2000 WL 1277597, at *5 (S.D.N.Y. Sept. 7, 2000); *see also Cuno, Inc. v . Hayward Indus. Prods., Inc.*, No. 03 Civ. 3076(MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (claims against non-signatory to contract are subject to forum selection clause because they are "closely related" to and "derivative of and depend on" the claims against the signatory). Here, Horvath's claims against Millennium are virtually identical to, and arise out of the same transactions as, those asserted against BCP. Specifically, Horvath contends that Millennium

4

aided and abetted BCP's breach of fiduciary duty by acting in concert with it to negligently misrepresent the nature and risks associated with certain securities that BCP marketed and sold to him. Given that Millennium has consented to jurisdiction in Portugal, we therefore hold that Horvath's claims against Millennium fall under the forum selection clause in the General Terms and Conditions.

Finally, Horvath contends that enforcing the terms of the forum selection clause would be unjust in the circumstances of this case because he had no reason to anticipate that, by signing the Client Statement, he was "surrendering his rights to litigate any dispute with [BCP and Millenium] in the United States." Appellant Br. at 41. We agree with the district court in seeing no injustice in the circumstances presented here:

> Plaintiff established an investment account in Portugal with a Portuguese firm to invest in foreign securities and has a residence in Portugal. It cannot be said that the choice of Portugal as a forum is either gravely inconvenient or unfair. Plaintiff has a full opportunity to pursue his claims in Portugal. Plaintiff has not contended that application of the forum selection clause deprives him of a remedy.

*Horvath v. Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697(GBD), 2011 WL 666410, at *6 (S.D.N.Y. Feb. 15, 2011) (paragraph break omitted).

Accordingly, for the foregoing reasons, we conclude that all of Horvath's claims fall under the forum selection clause in the General Terms and Conditions, and must therefore be litigated in the "Courts of Lisbon or Oporto" in Portugal. J.A. 195. As a result of this conclusion, we need not reach Horvath's arguments relating to the district court's dismissal of particular claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Finally, the district court did not abuse its discretion in declining to allow Horvath leave to amend his Complaint. As we have previously held, it is not an abuse of discretion to deny

5

leave to amend where, as here, a plaintiff "requested to amend [his] complaint on the final page of [his] brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted." *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (summary order).

We have considered all of Horvath's other arguments on appeal and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK